IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11-cv-02057-JAR -JPO |
| | ) | |
| ORVAL KENT FOOD COMPANY, INC. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

A.      Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action alleging that Defendant Orval Food Company, Inc. ("Orval Kent"), violated the Clean Water Act ("Act").

B.      The Complaint alleges that Orval Kent discharged excessive amounts of biochemical oxygen demand (BOD) and total suspended solids (TSS) from its food processing plant in Baxter Springs to the City of Baxter Springs, Kansas wastewater treatment plant.  The Complaint alleges that these discharges violated 33 U.S.C. §§ 1311 and 1317 and 40 C.F.R. § 403.5 because they alone, or in combination with other discharges, caused pass-through (*i.e.* caused the City's plant to violate its permit limits) and also interfered with the proper operation of the City's plant.

C.      On or about February 29, 2008, EPA issued Orval Kent an administrative order that required Orval Kent to perform interim measures, conduct monitoring, and develop and implement a compliance plan.  Pursuant to a schedule and plan approved by EPA pursuant to this order, Orval Kent completed installation of a pretreatment system that went on line and was operational as of February 2010.

D.      The City of Baxter Spring's wastewater treatment plant discharges to the Spring River, which serves as habitat for several species of fish and oysters.  Communities downstream of Baxter Springs, Kansas use the Spring River for both subsistence and recreational fishing.

E.      Orval Kent does not admit any liability to the United States arising out of the allegations in the Complaint.

F.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

G.      NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (General Provisions), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

I.      GENERAL PROVISIONS

1.      Jurisdiction and Venue.  This Court has jurisdiction over the subject matter of this action and over the Parties, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 33 U.S.C. § 1319(b).  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 33 U.S.C. § 1319(b), because the violations alleged in the Complaint are alleged to have occurred in, and Orval Kent conducts business in, this judicial district.

2.      Consent to Jurisdiction and Venue.  For purposes of this Decree, or any action to enforce this Decree, Orval Kent consents to the Court's jurisdiction over this Decree and any such action and over Orval Kent and consents to venue in this judicial district.  For purposes of this Consent Decree, Orval Kent agrees that the Complaint states claims upon which relief may be granted pursuant to 33 U.S.C. § 1319.

3.      Retention of Jurisdiction.  The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree as provided in Paragraph 12 (Modification), or effectuating or enforcing compliance with the terms of this Decree.

4.      <u>Applicability</u>.  The obligations of this Consent Decree apply to and are binding upon the United States, and upon Orval Kent and any successors, assigns, or other entities or persons otherwise bound by law.

5.      <u>Transfer of Property.</u>  No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Orval Kent of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Orval Kent shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States Attorney for the District of Kansas, and the United States in accordance with Paragraph 11 (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

6.      <u>Distribution of Consent Decree</u>.  Orval Kent shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Orval Kent shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.      <u>Responsibility of Orval Kent</u>.  In any action to enforce this Consent Decree, Orval Kent shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

8.      <u>Purpose of Decree</u>.  It is the express purpose of this Decree to further the objectives of the Clean Water Act as well as regulations and permits issued pursuant to that Act. All obligations in this Decree shall have the objective of causing Orval Kent to be and remain in full compliance with the Clean Water Act, the regulations and permits issued pursuant to that Act, as well as state and local laws, regulations, and permits authorized pursuant to that Act.

9.      <u>Definitions</u>.  Terms used in this Consent Decree that are defined in the Clean Water Act or in regulations promulgated pursuant to that Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Affected River Stretch" shall mean that portion of the Spring River that stretches from the discharge point for the City of Baxter Springs' wastewater treatment plant to the point twenty-two river miles downstream of that discharge point;

b.      "Baxter Springs POTW" shall mean the publicly owned treatment works located in Baxter Springs, SW¼, Section 6, Township 35S, Range 25 E, Cherokee County, Kansas.

c.      "Complaint" shall mean the complaint filed by the United States in this action;

d.      "Consent Decree" shall mean this Decree;

e.      "Day" shall mean a calendar day;

-4-

f.      "Date of Lodging" shall mean the date on which this Consent Decree is filed with this court.

g.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h.      "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket;

i.      "Facility" shall mean Orval Kent's food processing plant located in Baxter Springs, Kansas.

j.      "Orval Kent" shall mean the entity named as the Defendant in the Complaint.

k.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

l.      "Parties" shall mean the United States, and Orval Kent;

m.      "Section" shall mean a portion of this Decree identified by a Roman numeral;

n.      "United States" shall mean the United States of America, acting on behalf of EPA.

10.    Costs.  The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Orval Kent.

11.   <u>Notices</u>. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>To the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-09625

and

Howard Bunch
Senior Assistant Regional Counsel
U.S. EPA, Region 7
Kansas City, KS 66101

<u>To EPA</u>:

Howard Bunch
Senior Assistant Regional Counsel
U.S. EPA, Region 7
Kansas City, KS 66101

and

Paul Marshall
Pretreatment Coordinator
U.S. EPA, Region 7
Kansas City, KS 66101

<u>To Orval Kent</u>:

Kent Kring
Vice President, Supply Chain
Orval Kent Food Company, Inc.
120 W. Palatine Road
Wheeling, IL 60090

Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

12. <u>Modification</u>.  The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.  Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 58 (Standard of Review), the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

13. <u>Termination</u>.

a. After Orval Kent has completed the requirements of Section III (Compliance Requirements and Injunctive Relief) of this Decree, has thereafter maintained continuous compliance with 33 U.S.C. §§ 1311 and 1317 and 40 C.F.R. § 403.5 for a period of one calendar year, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Orval Kent may serve upon the United States in accordance with Paragraph 11 (Notices) a request for termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

b.      Following the United States' receipt of Orval Kent's request for termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Orval Kent has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

c.      If the United States does not agree that the Decree may be terminated, Orval Kent may invoke the dispute resolution procedures of Section X (Dispute Resolution). However, Orval Kent shall not invoke the procedures of that Section until at least ninety Days after service of its request for termination.

14.     <u>Public Participation</u>.  This Consent Decree shall be lodged with the Court for a period of not less than thirty Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Orval Kent consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Orval Kent in writing that it no longer supports entry of the Consent Decree.

15.     <u>Headings</u>.  Headings in this Decree are provided for convenience only and shall not affect the substance of any provision.

16.     <u>Computation of Time</u>.  The computation of any period of time set forth in this Decree shall be governed by Rule 6 of the Federal Rules of Civil Procedure.  In computing any

period of time under this Consent Decree, where the last Day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business Day.

17.     <u>Signatories</u>.  Each undersigned representative of Orval Kent and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

18.     <u>Counterparts.</u>  This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Orval Kent agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

19.     <u>Integration</u>.  This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

20.     <u>Final Judgment.</u>  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

21.     <u>Right of Entry</u>.  The United States and its authorized representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

        a.     monitor the progress of activities required under this Consent Decree;

        b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

        c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

        d.     obtain documentary evidence, including photographs and similar data; and

        e.     assess Defendant's compliance with this Consent Decree.

22.     <u>Split Samples</u>.  Upon request, Orval Kent shall provide EPA or its authorized representatives splits of any samples taken by Orval Kent pursuant to this Consent Decree.

23.     <u>Retention of Information.</u>

        a.     Until five years after the termination of this Consent Decree, Orval Kent shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Orval Kent's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United

States, Orval Kent shall provide copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph.

      b.     At the conclusion of the information-retention period provided in this Paragraph, Orval Kent shall notify the United States at least ninety Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Orval Kent shall deliver any such non-privileged documents, records, or other information to EPA.

      c.     Orval Kent may assert that certain documents, records, or other information requested by the United States pursuant to subparagraphs a or b are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Orval Kent asserts such a privilege, it may withhold the privileged information but shall provide a privilege log to the United States no later than thirty days following the request for documents by the United States.  For each such document withheld on the grounds of privilege, the privilege log shall identify the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Orval Kent.  However, no documents, records, or other information submitted pursuant to or necessary to determine compliance with the requirements of this Consent Decree shall be withheld on grounds of privilege.

      d.     Orval Kent may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.

As to any information that Orval Kent seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

24.     <u>Other Authorities</u>.  This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Orval Kent to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

II.     <u>CIVIL PENALTY</u>

25.     <u>Civil Penalty</u>.  Orval Kent shall pay the sum of $390,000 as a civil penalty, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.  Orval Kent shall pay this penalty in the following three installments:  (a) $150,000 plus interest since the Date of Lodging no later than July 1, 2011, or 60 days after the Effective Date, whichever occurs later; (b) $120,000 plus interest since the Date of Lodging no later than 365 days after the Effective Date; and (c) $120,000 plus interest since the Date of Lodging no later than 730 days after the Effective Date.

26.     <u>Payment of Civil Penalty</u>.  Orval Kent shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Orval Kent following lodging of the Consent Decree by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Kansas, 500 State Avenue, Suite 360, Kansas City, KS 66101, 913-551-6541.  At the time of payment, Orval Kent shall send a copy of the Electronic Funds Transfer authorization form and transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed

pursuant to the Consent Decree in the above-captioned case, and shall reference the civil action

number and DOJ case number 90-5-1-1-09625, to the United States in accordance Paragraph 11

(Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

     27.    Tax Treatment.  Orval Kent shall not deduct any civil or stipulated penalties paid

under this Consent Decree in calculating its federal income tax.

III.    COMPLIANCE REQUIREMENTS AND INJUNCTIVE RELIEF

     28.    Termination of Administrative Order.  Within thirty (30) days of the Effective

Date this Consent Decree, EPA shall terminate the February 29, 2008 Order, and thereafter

Defendant's monitoring, reporting and injunctive obligations to address the violations alleged in

the Complaint shall be governed by this Consent Decree.

     29.    Cessation of Pass-through and Interference.  Upon the Effective Date and subject

to Paragraph 31 (Phase 2 Compliance), Orval Kent shall cease all pass-through and interference

caused by its discharges to the City of Baxter Spring's wastewater treatment plant.

     30.    Sampling.  Commencing the first week following the Effective Date, Orval Kent

shall sample its wastewater at the point of discharge to the Baxter Springs POTW for the

following parameters:  total suspended solids, biochemical oxygen demand, oil and grease, and

pH.  Orval Kent shall conduct this sampling weekly until six months after the Effective Date and

monthly thereafter.

     31.    Phase 2 Compliance.

a.      If after review of the results required by Paragraph 30 (Sampling) and all other relevant information (including but not limited to the Baxter Spring POTW's compliance with its NPDES permit, related orders, and good engineering practices regarding management and periodic clean-out of the lagoons), EPA determines that Orval Kent's discharges alone, or in combination with other discharges, are causing pass through of pollutants to the Baxter Springs POTW and/or interference with the proper operation of the Baxter Springs POTW, then EPA shall issue a written determination that Orval Kent must develop and implement a Phase 2 compliance plan.

b.      Within ninety days of EPA issuing a written determination pursuant to this Paragraph, Orval Kent shall submit to EPA a Phase 2 compliance plan that shall, at a minimum: (1) identify the causes of the pass through and/or interference; (2) propose sufficient process changes and/or additional wastewater treatment equipment, whether at the Facility, the Baxter Springs POTW, or both, to eliminate the pass through and/or interference; (3) contain a schedule for implementing the changes or installation; and (4) provide for regular reporting of information necessary to determine compliance with the requirements and proposed schedule contained in the plan.  Review and implementation of this Phase 2 compliance plan will proceed in accordance with Paragraph 33 (Approval of Deliverables).

c.      Upon completion of the actions required in the Phase 2 compliance plan required by this Paragraph and at least one calendar year's worth of operating data, Orval Kent shall demonstrate that its discharges, alone or in conjunction with other discharges, have not caused pass through or interference at the Baxter Springs POTW for one calendar year.

32.   <u>Re-Stocking</u>.  Within 60 days of the Effective Date of this Consent Decree, Orval Kent shall submit a Re-Stocking Plan to EPA for review and approval pursuant to Paragraph 33 (Approval of Deliverables).  The plan shall provide for Orval Kent to expend no less than $32,500 on a fish re-stocking project and shall describe, at a minimum:

a.   The number and species of fish or other aquatic wildlife to be re-stocked;

b.   A proposed location for re-stocking that (1) is in or near the watershed of the Spring River; (2) currently provides suitable habitat for the proposed species to be re-stocked taking into consideration discharges from sources other than the City of Baxter Springs Kansas; and (3) is accessible to recreational and subsistence fisherman who reside in the vicinity of the Affected River Stretch;

c.   A schedule for completing the re-stocking that provides for the completion of the project within two calendar years of the Effective Date and provides for the introduction of the proposed species at an appropriate season;

d.   A budget for the project; and

e.   A schedule and method for documenting the costs expended and the implementation of the project.

33.   <u>Approval of Deliverables</u>.

a.   After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing:  a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

-15-

b.       If the submission is approved, Orval Kent shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.

c.       If the submission is conditionally approved or approved only in part, Orval Kent shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Orval Kent's right to dispute only the specified conditions or the disapproved portions, under Section X (Dispute Resolution).

d.       If the submission is disapproved in whole or in part, Orval Kent shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding subparagraphs.  If the resubmission is approved in whole or in part, Orval Kent shall proceed in accordance with the preceding subparagraph.

e.       Any stipulated penalties applicable to the original submission, as provided in Section VIII (Stipulated Penalties), shall accrue during the 30-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Orval Kent's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

f.       If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Orval Kent to correct any deficiencies,

-16-

in accordance with the preceding subparagraphs, or may itself correct any deficiencies, subject to Orval Kent's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties.

34.     <u>Permits</u>.  Where any obligation under this Consent Decree requires Orval Kent to obtain a federal, state, or local permit or approval, Orval Kent shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Orval Kent may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Orval Kent has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

35.     <u>Quarterly Reports</u>.  Within 30 Days after the end of each calendar-year quarter (*i.e.*, by April 30, July 30, October 30, and January 30) after the Effective Date, until termination of this Decree, Orval Kent shall submit a report for the preceding quarter to the United States in accordance with Paragraph 11 (Notices).  Each report shall include, at a minimum, (a) a table clearly showing the results of sampling conducted pursuant to Paragraph 30 (Sampling), date taken and wastewater flow; (b) copies of the analytical results for all samples required pursuant to Paragraph 30 (Sampling); (c) a written summary of all other activities undertaken pursuant to this Consent Decree; and (d) a written summary of any discharges to the Baxter Springs POTW that had the potential to cause the pass through of pollutants and/or interference with the Baxter Springs POTW's wastewater treatment processes and operations.  The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an

-17-

explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

36.     <u>Non-Compliance Reporting</u>.  If Orval Kent violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Orval Kent shall notify the United States in accordance with Paragraph 11 (Notices) within ten working Days of the Day Orval Kent first becomes aware of the violation.  Each such notification shall describe each violation and its likely duration and each violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize each violation.  If the cause of a violation cannot be fully explained at the time the report is due, Orval Kent shall so state in the report.  Orval Kent shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Orval Kent becomes aware of the cause of the violation.  Nothing in this Paragraph relieves Orval Kent of its obligation to provide the notice required by Section IX (Force Majeure).

37.     <u>Additional Reporting</u>.  Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Orval Kent's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Orval Kent shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Orval Kent first knew of the violation or event. This procedure is in addition to the requirements set forth in Paragraph 36 (Non-Compliance Reporting).  Nothing in this Paragraph relieves Orval Kent of its obligation to provide the notice required by Section IX (Force Majeure).

38.   <u>Certification of Reports</u>.  Each report submitted by Orval Kent under this Section

shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were
> prepared under my direction or supervision in accordance with a system designed
> to assure that qualified personnel properly gather and evaluate the information
> submitted.  Based on my inquiry of the person or persons who manage the system,
> or those persons directly responsible for gathering the information, the
> information submitted is, to the best of my knowledge and belief, true, accurate,
> and complete.  I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations.

39.   <u>Effect on Other Reporting Requirements</u>.  The reporting requirements of this

Consent Decree do not relieve Orval Kent of any reporting obligations required by the Clean

Water Act or its implementing regulations, or by any other federal, state, or local law, regulation,

permit, or other requirement.

40.   <u>Use of Reports.</u>  Any information provided pursuant to this Consent Decree may

be used by the United States in any proceeding to enforce the provisions of this Consent Decree

and as otherwise permitted by law.

VIII.  <u>STIPULATED PENALTIES</u>

41.   <u>Stipulated Penalties.</u>  Orval Kent shall be liable for stipulated penalties to the

United States for violations of this Consent Decree as specified below, unless excused under

Section IX (Force Majeure).  A violation includes failing to perform any obligation required by

the terms of this Decree, including any work plan or schedule approved under this Decree,

according to all applicable requirements of this Consent Decree and within the specified time

schedules established by or approved under this Decree.

-19-

42.     <u>Late Payment of Civil Penalty.</u> If Orval Kent fails to pay the civil penalty required to be paid under Section II (Civil Penalty) when due, Orval Kent shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

43.     <u>Compliance Milestones.</u>

a.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in subparagraph b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 30th Day |
| $1,500 | 31th through 60th Day |
| $2,000 | 61st Day and beyond |

b.      The requirements of Paragraphs 29 (Cessation of Pass-through and Interference); 30 (Sampling); 31 (Phase 2 Compliance); 32 (Re-Stocking); 33 (Approval of Deliverables); and 34 (Permits).

44.     <u>Reporting Requirements.</u>

a.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in subparagraph b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $  500 | 1st through 30th Day |
| $1,000 | 31st through 60th Day |
| $1,500 | 61st Day and beyond |

b.      The requirements of Paragraphs 35 (Quarterly Reports); 36 (Non-Compliance Reporting); 37 (Additional Reporting); and 38 (Certification of Reports).

45.     <u>Accrual of Stipulated Penalties</u>.  Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

46.     <u>Payment of Stipulated Penalties</u>.  Orval Kent shall pay any stipulated penalty within thirty Days of receiving the United States' written demand. Orval Kent shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 26 (Payment of Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

47.     <u>Effect of Dispute Resolution</u>.  Stipulated penalties shall continue to accrue as provided in Paragraph 45 (Accrual of Stipulated Penalties), during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Orval Kent shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Orval Kent shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty Days of receiving the Court's decision or order, except as provided in subparagraph c.

c.      If any Party appeals the District Court's decision, Orval Kent shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

48.      Interest of Unpaid Stipulated Penalties.  If Orval Kent fails to pay stipulated penalties according to the terms of this Consent Decree, Orval Kent shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Orval Kent's failure to pay any stipulated penalties.

49.      Reservation of Other Remedies.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Orval Kent's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of statutory or regulatory requirements, Orval Kent shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX. FORCE MAJEURE

50.      Definition of Force Majeure.  "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Orval Kent, of any entity controlled by Orval Kent, or of Orval Kent's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Orval Kent's best efforts to fulfill the obligation.  The requirement that Orval Kent exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best

-22-

efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred

to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does

not include Orval Kent's financial inability to perform any obligation under this Consent Decree.

      51.   <u>Notification Requirements</u>.  If any event occurs or has occurred that may delay

the performance of any obligation under this Consent Decree, whether or not caused by a force

majeure event, Orval Kent shall provide notice orally or by electronic or facsimile transmission

to Paul Marshall (931-551-7419) within seventy-two hours of when Orval Kent first knew that

the event might cause a delay.  Within seven days thereafter, Orval Kent shall provide in writing

to EPA an explanation and description of the reasons for the delay; the anticipated duration of

the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for

implementation of any measures to be taken to prevent or mitigate the delay or the effect of the

delay; Orval Kent's rationale for attributing such delay to a force majeure event if it intends to

assert such a claim; and a statement as to whether, in the opinion of Orval Kent, such event may

cause or contribute to an endangerment to public health, welfare or the environment.  Orval Kent

shall include with any notice all available documentation supporting the claim that the delay was

attributable to a force majeure.  Failure to comply with the above requirements shall preclude

Orval Kent from asserting any claim of force majeure for that event for the period of time of

such failure to comply, and for any additional delay caused by such failure.  Orval Kent shall be

deemed to know of any circumstance of which Orval Kent, any entity controlled by Orval Kent,

or Orval Kent's contractors knew or should have known.

      52.   <u>Effect of Force Majeure</u>.

a.      If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Orval Kent in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

b.      If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Orval Kent in writing of its decision.

53.     <u>Invocation of Dispute Resolution</u>.  If Orval Kent elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than fifteen days after receipt of EPA's notice.  In any such proceeding, Orval Kent shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Orval Kent complied with the requirements of Paragraphs 50 (Definition of Force Majeure) and 11 (Notification Requirements).  If Orval Kent carries this burden, the delay at issue shall be deemed not to be a violation by Orval Kent of the affected obligation of this Consent Decree identified to EPA and the Court.

X.  <u>DISPUTE RESOLUTION</u>

54.     <u>Exclusivity of Procedure</u>.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The procedures set forth in this Section shall not apply to actions by any Plaintiff to enforce obligations of Orval Kent that have not been disputed in accordance with this Section.

55.     <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Orval Kent sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed thirty Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty Days after the conclusion of the informal negotiation period, Orval Kent invokes formal dispute resolution procedures as set forth below.

56.     <u>Formal Dispute Resolution</u>.

a.     Orval Kent shall invoke formal dispute resolution procedures, within the time period provided in Paragraph 55 (Informal Dispute Resolution), by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Orval Kent's position and any supporting documentation relied upon by Orval Kent.

b.      The United States shall serve its Statement of Position within forty-five Days of receipt of Orval Kent's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Orval Kent, unless Orval Kent files a motion for judicial review of the dispute in accordance with the following Paragraph.

57.     <u>Judicial Review</u>

a.      Orval Kent may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within twenty Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Orval Kent's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

b.      The United States shall respond to Orval Kent's motion within the time period allowed by the Local Rules of this Court.  Orval Kent may file a reply memorandum, to the extent permitted by the Local Rules.

58.     <u>Standard of Review</u>

a.      Except as otherwise provided in this Consent Decree, in any dispute brought under this Section pertaining to EPA's determination pursuant to Paragraph 31 (Phase II Compliance) or the adequacy or appropriateness of plans, procedures to implement plans,

schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Orval Kent shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. Except as otherwise provided in this Consent Decree, in any other dispute brought under this Section, Orval Kent shall bear the burden of demonstrating that its position complies with the objectives of the Consent Decree.

59. <u>Effect of Dispute Resolution on Deadlines</u>.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Orval Kent under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 47 (Effect of Dispute Resolution).  If Orval Kent does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

XII. <u>EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>

60. <u>Effect of Settlement</u>. This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

61.     <u>Reservation of Rights</u>.  The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 60 (Effect of Settlement).  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Clean Water Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 60 (Effect of Settlement).  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Orval Kent's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

62.     <u>Waiver of Certain Defenses</u>.  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Orval Kent shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 60 (Effect of Settlement).

63.     <u>Limitations on Effect of Decree</u>.

a.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Orval Kent is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Orval Kent's compliance with this Consent Decree shall be no

defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Orval Kent's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Water Act, 33 U.S.C. §§ 1319 *et seq*., or with any other provisions of federal, State, or local laws, regulations, or permits.

      b.     This Consent Decree does not limit or affect the rights of Orval Kent or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Orval Kent, except as otherwise provided by law.

      c.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

Dated and entered this <u>16</u> day of <u>March</u>, <u>2011</u>

<u>  s/  Julie A. Robinson         </u>

UNITED STATES DISTRICT JUDGE
District of Kansas

WE HEREBY CONSENT to the entry of the Consent Decree in United States v. Orval Kent Food Products, Inc., subject to the public comment requirements of 28 C.F.R. § 50.7.

**FOR THE UNITED STATES OF AMERICA**

1/19/11
Date

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

7/24/2011
Date

SARAH D. HIMMELHOCH
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

-30-

WE HEREBY CONSENT to the entry of the Consent Decree in United States v. Orval Kent Food Products, Inc., subject to the public comment requirements of 28 C.F.R. § 50.7.

**FOR THE UNITED STATES OF AMERICA**

1/3/2011
Date

LOREN REMSBERG
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

-30a-

WE HEREBY CONSENT to the entry of the Consent Decree in United States v. Orval Kent Food Products, Inc., subject to the public comment requirements of 28 C.F.R. § 50.7.

1/25/2011
Date

Karl Brooks
Regional Administrator
U.S. Environmental Protection Agency, Region VII
901 N. 5th Street
Kansas City, KS 66101

1/21/11
Date

HOWARD BUNCH
Senior Assistant Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region VII
901 N. 5th Street
Kansas City, KS 66101

-31-

WE HEREBY CONSENT to the entry of the
Consent Decree in United States v. Orval Kent Food
Company, Inc.

FOR ORVAL KENT:

_1/4/11_

Date

_____

Signature

Name:      Steven B. Silk

Title:        Chief Executive Officer

Address:  120 W. Palatine Rd., Wheeling IL 60090

Agent Authorized to Accept Service on Behalf of Above-signed Party:

    Name:

    Title:

    Address:

    Ph. Number: